IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY BETH HINES-CASTLEBERRY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| v. | ) | |
| | ) | |
| J.P. MORGAN CHASE BANK, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Mary Beth Hines-Castleberry, Plaintiff herein, and files this, her Complaint for Damages against Defendant J.P. Morgan Chase Bank for violations of the Real Estate Settlement Procedures Act, and shows this Honorable Court the following:

## PARTIES, JURISDICTION, AND VENUE

### 1.

Plaintiff May Beth Hines-Castleberry is a citizen of the State of Georgia and resides in Stewart County, Richland, Georgia.

### 2.

Defendant J.P. Morgan Chase Bank is a New York Profit corporation, with its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240.

3.

Defendant J.P. Morgan Chase Bank maintains its registered office at C.T. Corporation System, 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046 and may be served with Summons and Complaint at this address.

4.

Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 in that one of the counts within this complaint involves a federal question.

5.

Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) in that all of the events and omissions giving rise to these claims occurred in this district.

**OPERATIVE FACTS**

6.

Plaintiff is buying a home located at 111 Walker Street, Richland, Stewart County, Georgia 31825.

7.

Plaintiff and her former husband, Robert V. Hines, took out a mortgage and promissory note with Amtrust Funding Services, Inc. on October 29, 2003, which contains a clause requiring payment for certain items into an escrow account.

8.

Said "Escrow Clause" reads as follows:

> Funds for Escrow Items: Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property: (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items as called "Escrow Items." At origination or at any time during the terms of the Loan, Lender may require that Community Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing, In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Item, for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items dircctly,

> pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to repay to Lender and such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Amtrust Funding Services, Inc. Security Deed is attached hereto as Exhibit A.

9.

Plaintiff and Robert V. Hines divorced and on August 9, 2011, Robert V. Hines quit claimed all interest in the property at 111 Walker Street to Plaintiff. Quit Claim Deed is attached hereto as Exhibit B.

10.

On March 12, 2018, the Amtrust Funding Services, Inc. mortgage and promissory note was assigned to J.P. Morgan Chase Bank, loan number 19969314763. Assignment is attached hereto as Exhibit C.

11.

As all times relevant to this Complaint, Plaintiff has been and remains current on all payments on the mortgage, including amounts owed for Escrow Items.

12.

On April 2, 2021, Plaintiff suffered a property loss due to a fire at her residence at 111 Walker Street which resulted in $8,500.00 worth of damage to the structure and a loss of $4,932.00 in personal property.

13.

When Plaintiff attempted to file a claim with her homeowner's insurance policy, Plaintiff was informed that her policy had been cancelled due to nonpayment of the insurance premium.

14.

It was later determined that the cancellation was due to an error by J.P. Morgan Chase Bank mailing a check for payment to an incorrect address to the Georgia Underwriting Association.

15.

When the check was returned to J.P. Morgan Chase Bank, a new check was never reissued nor sent to the correct address, therefore resulting in the cancellation of Plaintiff's insurance.

16.

Due to insurance cancellation, J.P. Morgan Chase Bank purchased force-placed insurance on Plaintiff's home to cover J.P. Morgan Chase Bank's interest only.

17.

A representative with J.P. Morgan Chase Bank also stated that due to the error by J.P. Morgan Chase Bank not paying the original premium, J.P. Morgan Chase Bank would file a claim directly with the Assurant Standard Guaranty Insurance Company and gave a claim reference number of #366886172 for Plaintiff's records.

18.

On July 26, 2021, Plaintiff received a notice of a payout and check from an insurer for an insufficient amount, which was not enough to repair the structural damages and did not include any compensation for replacing the personal property that was lost during the fire.

19.

At that time, Plaintiff discovered that when J.P. Morgan Chase Bank failed to correctly pay her insurance premium, J.P. Morgan Chase Bank purchased a new premium on behalf of Plaintiff, which was apparently force-placed insurance not having the same coverage as Plaintiff's original policy. Because of this, only a

portion of the structural damage was covered, and no compensation was awarded for any of the personal property.

20.

Since the payout check was insufficient to cover all damages and personal property, Plaintiff refused the same and returned it to the insurer on August 16, 2021. Since this date, Plaintiff has attempted to contact J.P. Morgan Chase Bank but has not received any update on the status of the claim.

21.

On February 22, 2022, Plaintiff, through counsel, sent a Real Estate Settlement Procedures Act Notice of Error under 12 C.F.R. § 1024 to J.P. Morgan Chase Bank via certified mail return receipt requested to Mail Code LA4-6911, 700 Kansas Lane, Monroe, Louisiana 71203. Plaintiff's Notice of Error is attached hereto as Exhibit D.

22.

Plaintiff has never received a response to her RESPA Notice of Error.

## THE REAL ESTATE SETTLEMENT PROCEDURES ACT

23.

The United States Congress, in enacting RESPA, found:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that

consumers throughout the Nation are provided with
greater and more timely information on the nature and
costs of the settlement process and are protected from
unnecessarily high settlement charges caused by certain
abusive practices that have developed in some areas of the
country.

12 U.S.C. § 2601(a).

24.

Further Congress stated the purpose of RESPA:

It is the purpose of this Act to effect certain changes in the
settlement process for residential real estate that will
result--

(1) in more effective advance disclosure to home buyers
and sellers of settlement costs;

(2) in the elimination of kickbacks or referral fees that tend
to increase unnecessarily the costs of certain settlement
services;

(3) in a reduction in the amounts home buyers are required
to place in escrow accounts established to insure the
payment of real estate taxes and insurance; and

(4) in significant reform and modernization of local
recordkeeping of land title information.

12 U.S.C. § 2601(b).

25.

RESPA defines a Qualified Written Request ("QWR") as follows:

Qualified written request. For purposes of this subsection,
a qualified written request shall be a written

correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605e(1)(B).

26.

RESPA requires that a mortgage servicer respond to a homeowner's QWR in

the following manner:

Action with respect to inquiry. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

27.

Regulations promulgated under RESPA defines a "Notice Of Error":

(a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

(b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

. . .

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

. . .

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

. . .

(11) Any other error relating to the servicing of a borrower's mortgage loan.

12 C.F.R. § 1024.35(b).

28.

The mortgage servicer's duties after receiving a Notice Of Error are:

Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e).

29.

RESPA regulations require the following:

> Timely escrow disbursements required. If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k).

12 C.F.R. § 1024.34(a).

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

30.

J.P. Morgan Chase Bank failed to pay Plaintiff's homeowner's insurance premium from Plaintiff's escrow account.

31.

Failure to pay Plaintiff's escrowed insurance premiums is an "enumerated error" as stated at 12 C.F.R. § 1024.35(b)(4), which states:

> Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

32.

Plaintiff has been damaged by Defendant's RESPA violation, as Plaintiff has not had the funds to repair her home from the damage suffered in the fire loss or the loss of personal property.

33.

Defendant, by failing to accurately respond to Plaintiff's Notice Of Error in accordance with RESPA laws and regulations, is liable to the Plaintiff for actual damages to be proven by competent evidence. 12 U.S.C. § 2605(f)(1)(A).

34.

Defendant, by failing to accurately respond to Plaintiff's Notice Of Error in accordance with RESPA laws and regulations, has demonstrated a pattern or practice of noncompliance with the requirements of RESPA, is liable to the Plaintiff for additional damages in an amount not to exceed $2,000.00. 12 U.S.C. § 2605(f)(1)(B).

35.

Defendant, by failing to accurately respond to Plaintiff's Notice Of Error in accordance with RESPA laws and regulations, is liable to the Plaintiff for the costs of this action, together with any attorney's fees incurred in connection with this action as this Court may determine to be reasonable under the circumstances. 12 U.S.C. § 2605(f)(3).

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a) Assume jurisdiction of this action;

b) Serve Defendant in manner prescribed by law;

c) Award Plaintiff actual damages in an amount to be proven at trial and statutory damages in an amount up to $2,000 for each violation of RESPA committed by Defendant pursuant to 12 U.S.C. § 2605(f)(1)(B);

d) Award Plaintiff the costs of this action, together with any attorney's fees as the court may determine to be reasonable under the circumstances pursuant to 12 U.S.C. § 2605(f)(3);

e) That Plaintiff have a trial by jury; and

f) Award such other and further relief as is just and equitable.

Respectfully submitted, this 31st day of May, 2022.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No.: 380104

1551 Jennings Mill Road, Unit 3100B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile (706) 996-2576
jhurt@hurtstolz.com                **ATTORNEY FOR PLAINTIFF**